IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. L-06-0444 |
| | : |
| STEVEN A. SODIPO and CALLIXTUS O. NWAEHIRI | : |

**MEMORANDUM**

**I.    Background**

Now pending is Interested Third Party Theresa I. Obot, Esquire's Motion to Amend Protective Order For Assets Subject to Forfeiture (Docket No. 460). Messrs. Steven Sodipo and Callixtus Nwaehiri ("defendants") operated NewCare Pharmacy, Inc. ("NewCare"). NewCare operated as a pharmacy and provider of nursing care to long-term care facilities and nursing homes. Defendants were convicted in August 2007 of distribution of controlled substances, money laundering, and tax fraud.

Ms. Obot is an attorney licensed in New York since 1999 and Maryland since 2000. Unrelated to the criminal prosecution, she represented NewCare Pharmacy in a breach of contract claim against Starflight Enterprises, Inc. ("Starflight"). NewCare contracted with Starflight to provide nursing care to Starflight, which operated residential treatment facilities for special needs children. NewCare alleged it was never paid for its services.

On January 21, 2008, Ms. Obot took this case against Starflight on a forty percent contingency fee agreement plus costs. See Mot. Ex. 1, Civil Retainer Agreement. On January 25, 2008, Ms. Obot filed a complaint in Baltimore City Circuit Court against Starflight. See Mot. Ex. B. On August 27th, she rejected an initial settlement offer of $10,000 from Starflight,

and began to prepare for an October trial. Ultimately, through mediation, she secured a settlement of $42,500 on September 19, 2008. See Mot. Ex. J, K, L.

Pursuant to 21 U.S.C. § 853(n), Ms. Obot now seeks her forty percent share of that settlement, $17,000, plus $500 in documented costs. On October 10, 2008, this Court granted the Government's Application for Protective Order over the full settlement amount. On November 18, 2008, Ms. Obot filed an emergency motion to amend this protective order to obtain her attorneys fees from that settlement.[1] On November 19th the Government responded, and further supplemented their response on November 24th. Ms. Obot replied on November 23rd, and filed a further affidavit on November 25th. The Court held a teleconference on the matter on November 24th.

## II. Analysis

This matter is controlled by 21 U.S.C. § 853(n). Section 853 governs criminal forfeitures of these defendants' assets. United States v. Reckmeyer, 836 F.2d 200, 203 (4th Cir. 1987). To this end, the statute contains a "relation-back" provision for third-party transfers, which allows the "government to reach forfeitable assets in the hands of third parties at the time of conviction." Id. This provision "vests in the United States" an interest in the property "upon the commission of the act giving rise to the forfeiture." § 853(c); Reckmeyer, 836 F.2d at 203. The purpose of § 853 is to prevent "defendants from escaping the impact of forfeiture by transferring assets to third parties" in "sham or fraudulent" transactions. Id. at 203, 208. Critically, the Fourth Circuit held, "Congress did not intend to permit courts to void 'arms-length' transactions." Id. at 208.[2]

---

[1] Ms. Obot filed an emergency motion because she is scheduled to go out of the country on November 26, 2008 for nearly two months.
[2] "[A]n order of forfeiture may reach only property of the defendant, save in those instances where a transfer to a third party is voidable. Thus, if a third party can demonstrate that his

"Subsection (n) provides the only means for third parties to establish their interest in forfeited property." Id. at 203. Any person with a legal interest in the forfeited property may petition the court to determine the validity of their interest in the property. § 853(n)(2). Per § 853(n)(6), a court must amend a forfeiture order if a petitioner demonstrates by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

In the Fourth Circuit, "unsecured creditors of persons who's property is subject to forfeiture have a legal interest in the debtor's property." Reckmeyer, 836 F.2d at 205. Section 853 also requires the unsecured creditor to prove a legal interest in the specific property subject to forfeiture. Id. Here, Ms. Obot meets this requirement because she has a specific, contractual interest in recovering her forty percent contingency fee from the settlement amount.[3] Finally, the term "legal interest" as used in the statute "encompasses all legally protected rights, claims, titles, or shares in real or personal property." Id. Legal interests are distinguished from equitable

---

interest in the forfeited property is exclusive of or superior to the interest of the defendant, the third party's claim renders that portion of the order of forfeiture reaching his interest invalid." Reckmeyer, 836 F.2d at 207-08 (quoting the report of the Senate Committee on the Judiciary).

[3] The contingency fee is therefore quite different from a billable-hour contract. In that latter case, Ms. Obot would be owed payment from the defendants as a mere general creditor of defendants' assets generally with no specific claim on a particular asset.

interests, which are not protected by § 853.[4]  Id.  So, Ms. Obot has a legal interest in forty percent of the settlement amount.

A.     § 853(n)(6)(A)

With respect to subpart (6)(A), the Court need only consider the first clause of this provision.  It is clear that Ms. Obot's interest in the property is vested in herself rather than in defendants (and therefore the government).  This property—the settlement—did not exist before Ms. Obot took the case.  It did not exist on January 21, 2008 when Mr. Sodipo signed the Civil Retainer Agreement.  It only came into existence on September 19, 2008, and only out of Ms. Obot's diligence.  Without Ms. Obot, the government would recover nothing from Starflight Enterprises' alleged breach of contract.  Now the government stands to recover $25,000.

The property interest vested when the property was created on September 19, 2008.  Further, Ms. Obot full forty percent interested vested immediately with her, not the defendants, based on the Civil Retainer Agreement.  The defendants never had a claim to her fee or discretion to withhold her fee.  For the same reason, neither does the Government.

In opposition, the Government does not address Reckmeyer in any way.  Instead, the Government argues that the "relation-back" provision of § 853(c) requires that an unsecured creditor must have had a vested interest prior to the commission of the offense.  This may be true if Ms. Obot had a billable-hour contract and sought recovery against the defendants' estate generally, but she does not.

---

[4] The Government, in its opposition, "while disputing any legal obligation to do so," is "willing to provide counsel with reasonable attorney's fees and expenses" based on an billable-hour calculation.  Opp'n 2 (emphasis in original).  The government's equitable offer for "reasonable" fees is not supported by statute or case law.  Either Ms. Obot has a valid property interest under § 853(n)(6) in forty percent of the settlement from Starflight or she does not.  The Court cannot consider such equitable arguments.  See Reckmeyer, 836 F.2d at 205 (A legal interest is an interest in law "in contrast to an equitable interest.").

Section 853(c) only applies to "third-party transfers." Ms. Obot's contingent recovery was not a transfer in any sense. From the moment the settlement was signed, the contingency fee belonged to her exclusively. Therefore, the Court's Order must be amended to release her contingency fee and costs.

B.   § 853(n)(6)(B)

Though the Court need not consider the issue further, Ms. Obot also raises a successful argument under subpart (B). In the Fourth Circuit, the term "bona fide purchaser for value" is "construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return." Id. at 208; See also United States v. Monsanto, 491 U.S. 600, 604 n.3 (1989) (suggesting attorney's fees are recoverable under subpart (B)). The statute also requires that the petitioner is "reasonably without cause to believe that the property was subject to forfeiture." § 853(n)(6)(B). The Fourth Circuit requires the Government to prove the petitioner had actual or constructive knowledge of the forfeitability of the property. Reckmeyer, 836 F.2d at 209.

As a matter of law, the Government could not show that any attorney could reasonably have foreseen that the Government would seek to prevent an attorney in Ms. Obot's position from recovering her contingency fee. Ms. Obot's property interest was exclusively hers from the moment of its creation, it was separate and distinct from any recovery to the defendants or the Government, and it was not voidable since it was not a fraudulent or sham transfer. See Reckmeyer, 836 F.2d at 207-08 (quoting the Senate Committee on the Judiciary).

**III.   Conclusion**

The Court, by separate Order, will GRANT Ms. Obot's motion for amendment of the protective order and ORDER the release her contingency fee of $17,000 plus $500 in costs.

It is so ORDERED this 25TH day of November, 2008.

Benson Everett Legg
Chief Judge