IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN ABIODUN SODIPO,

*Petitioner*,

v.

UNITED STATES OF AMERICA,

*Respondent*.

Crim. No. ELH-06-0444
(Related Civil No. ELH-13-2871)

**MEMORANDUM OPINION**

Following a lengthy trial by jury, Steven Abiodun Sodipo and his codefendant, Callixtus Nwaehiri, were convicted on July 31, 2008, of various offenses, including conspiracy to distribute and possess with intent to distribute hydrocodone, under 21 U.S.C. § 846.[1]  ECF 480; ECF 498.  On December 12, 2008, Chief Judge Benson E. Legg sentenced Sodipo to 60 months' imprisonment, followed by two years of supervised release.  ECF 488; ECF 498.[2]

On September 30, 2013, Sodipo, who is now self-represented, filed a petition to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 (ECF 672), along with a supporting memorandum and exhibits.  *See* ECF 672-1 to ECF 627-9.   A redacted petition (ECF 673) was also submitted, along with a supporting memorandum (ECF 673-1) and several exhibits (ECF 673-2 to ECF 673-9) (collectively, "Petition").[3]  The government opposes the Petition.

---

[1] Five defendants were named in the Indictment.  ECF 1.  The docket reflects that trial began on May 19, 2008, and continued for thirty-one days.  *See* ECF 299; ECF 386.

[2] This case was initially assigned to Judge Legg and was transferred to Judge William D. Quarles, Jr. on September 30, 2013, due to the retirement of Judge Legg.  It was reassigned to me on January 28, 2016, as a result of the then-impending retirement of Judge Quarles.  *See* Docket.

[3] The case of defendant number five is sealed.  Sodipo's individual case is not sealed.

ECF 675 ("Opposition").  Sodipo has replied (ECF 679, "Reply"), and has included an Affidavit. *Id.* at 12-14.[4]

Under 28 U.S.C. § 2255(b), a hearing is required "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief...."  This is such a case; no hearing is necessary.  For the reasons that follow, I shall deny the Petition.

## I.      Factual and Procedural Background

Sodipo was a licensed pharmacist in Maryland and, along with Nwaehiri, he was a part owner and operator of NewCare Home Health Services, Inc., also known as NewCare Pharmacy ("NewCare").  *See* Joint Appendix ("JA") at 976-78;[5] ECF 682 at 1.  In 2005, NewCare contracted with a Florida-based distribution business (the "Florida Headquarters"), which consisted of several corporations, to fill prescriptions over the Internet. *See* ECF 673–1 at 3; ECF 675 at 4–5. Patients from all 50 states contacted the Florida Headquarters; Florida-based doctors employed by the Florida Headquarters issued prescriptions to those patients without a face-to-face meeting; and NewCare filled the prescriptions.  *See* ECF 675 at 3, 5.  The vast majority of the thousands of prescriptions filled by NewCare were for hydrocodone, a highly addictive prescription painkiller, which is classified as a Schedule III controlled substance under the

---

[4] Sodipo's codefendant, Callixtus Nwaehiri, also filed a § 2255 petition.  *See* WDQ-13-0903; ELH-06-444, ECF 660.  Judge Quarles denied Nwaehiri's § 2255 petition on May 5, 2014. ECF 682 (Memorandum Opinion); ECF 683 (Order); *see also* 2014 WL 1800404 (D. Md. May 5, 2014).  I shall refer to ECF 682 as the "Quarles Opinion."

Two of the three issues raised by Sodipo in this Petition were also raised by Nwaehiri in his petition. Accordingly, where applicable, I incorporate the factual and procedural history in the Quarles Opinion.

[5] The JA and the Supplemental Joint Appendix ("SJA") were prepared in connection with the appeal to the Fourth Circuit filed by Sodipo and Nwaehiri.  *See* ECF 675 at 3, n. 3.

The government cited to the JA and SJA in its Opposition and subsequently furnished the Court with a copy of the appendices.  Transcripts of trial court proceedings are docketed at ECF 541; ECF 542; ECF 556; ECF 560 to ECF 585; ECF 591; ECF 592; and ECF 625 to ECF 642.

Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.* *See* ECF 675 at 3, 8–9; *see, e.g.*, JA at 1460; JA at 1489.

On October 4, 2006, Sodipo and several others were indicted on one count of conspiracy to distribute and possess with intent to distribute a controlled substance, "outside the scope of professional practice and not for a legitimate medical purpose," *i.e.*, "at least eight (8) million dosage units of hydrocodone. . . ." ECF 1 at 1 (Indictment); *see also* ECF 675 at 1. On September 19, 2007, a Superseding Indictment was filed as to multiple defendants, charging additional crimes. ECF 177 (Superseding Indictment); *see also* ECF 675 at 1-2.

At trial, the government produced evidence that various warning signs alerted, or should have alerted, Sodipo and his coconspirators to the fact that many of NewCare's customers were abusing hydrocodone, and that the prescriptions completed by the Florida Headquarters were not for legitimate medical needs. For example, staff members testified that they received calls from angry and agitated customers complaining about slightly incorrect pill counts and from others complaining that their relatives, who were NewCare customers, were addicted to hydrocodone. JA at 883-84; JA at 1080-81; JA at 1085. Fed–Ex called to complain about deliveries in neighborhoods with heavy drug use. JA at 889.

Notably, NewCare received "two to ten" after-hours calls a night from hysterical customers who had not received their drugs or had received incorrect pill counts. Supp. Joint App'x ("SJA") at 101-102. Sodipo was aware of these calls. JA at 884-90. In addition, staff members expressed concern to Sodipo and Nwaehiri about the validity of the prescriptions they were filling, because the majority of the prescriptions were for hydrocodone and most of the patients did not live near the Florida-based medical providers who prescribed the hydrocodone. JA at 1381-86; SJA at 83; JA at 879-890; JA at 973. Sodipo also made misrepresentations about

3

the nature of NewCare's business to state regulators, NewCare's suppliers, and NewCare's staff. *See, e.g.,* JA at 990-91; JA at 1385-86; SJA at 85; JA at 853-57; SJA at 164-65; SJA at 136-37; JA at 1210-11.

On July 31, 2008, after an eight-week trial before then Chief Judge Benson E. Legg, a jury convicted Sodipo of conspiracy to distribute and possess with intent to distribute hydrocodone, in violation of 21 U.S.C. § 846; six counts of distribution of hydrocodone and aiding and abetting, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2; conspiracy to launder monetary instruments and two counts of money laundering, in violation, respectively, of 18 U.S.C. §§ 1956(h) and 1957(a); and filing a false tax return, in violation of 26 U.S.C. § 7206(1). *See* ECF 480, ECF 498; *see also* ECF 177.

Judge Legg held a sentencing hearing on December 2, 2008.  ECF 45.  It resumed on December 12, 2008.  ECF 488. *See also* ECF 498 (Judgment).  As noted, Sodipo received a sentence of five years' imprisonment.  ECF 488; ECF 498.

On December 17, 2008, Sodipo appealed his conviction and sentence to the Fourth Circuit.  ECF 489.  Nwaehiri also appealed.  Both argued that the trial court erred in denying the defendants' motion for a mistrial on grounds that a government witness testified about evidence the Court had ruled inadmissible, and that the prosecutor had made improper statements during closing arguments. *United States v. Sodipo*, 467 F. App'x 161, 162–63 (4th Cir. 2012) (per curiam), *cert. denied*, ___U.S.___, 133 S. Ct. 281 (2012), and *cert. denied*, ___U.S.___, 133 S. Ct. 457 (2012).  The defendants also argued that the District Court erred in denying their motion for new trial, "because the court failed to ensure that the jury began deliberations anew when the court replaced a juror with an alternate after deliberations were in progress." *Sodipo,* 467 F. App'x at 163.  Sodipo's appellate counsel was also his trial counsel.

4

The Fourth Circuit affirmed the defendants' convictions. *Id.* Sodipo's petition for writ of certiorari was denied by the Supreme Court on October 1, 2012. *Sodipo v. United States*, ___U.S.___, 133 S. Ct 281 (2012). On September 30, 2013, Sodipo timely filed his Petition. ECF 672; ECF 673. *See* 28 U.S.C. 2255(f) (providing a one-year limitations period for the filing of a petition, dating from the date of finality of the judgment).

As noted, this case was reassigned to me on January 28, 2016. *See* Docket. By that point, Sodipo's two-year period of supervised release had expired. Therefore, by Order of March 18, 2016 (ECF 691), I asked Sodipo to advise the Court whether he wished to pursue his Petition. *Id.* The Clerk docketed correspondence from Sodipo on April 4, 2016, advising the Court of his desire to pursue his Petition. ECF 693.

Additional facts are included in the Discussion.

## II.      Standard of Review

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence," but only on certain grounds: "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . ." *See also United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015).

Collateral attack is not a substitute for direct appeal; failure to raise certain issues on direct appeal may render them procedurally defaulted on post-conviction review. *United States v. Frady*, 456 U.S. 152, 165 (1982); *accord Bousely v. United States*, 523 U.S. 614, 630 (1998). As a general rule, a petitioner who fails to raise a claim on direct appeal is barred from raising the claim on collateral review. *Sanchez–Llamas v. Oregon*, 548 U.S. 331, 350–51 (2006).

However, this bar generally does not apply to claims pertaining to ineffective assistance of counsel. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 503–04 (2003).

Under 28 U.S.C. § 2255(b), the post-conviction court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g.*, *United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004).  Courts have determined that a hearing is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion."  *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993).  On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue."  *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see also United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

Of course, a self-represented litigant is generally "held to a 'less stringent standard[ ]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Nevertheless, I am satisfied that no hearing is necessary to resolve Sodipo's claims.

### III.    Discussion

### A.

The Petition contains three principal contentions, two of which are related.  First, Sodipo contends that the District Court committed a "constitutional error" when it denied his motion for a mistrial because of an alleged grudge between the Court and defense counsel. ECF 673-1 at 4. Second, he claims ineffective assistance of counsel because his trial counsel failed to investigate and articulate a proper and adequate defense based upon provisions of Florida Board of Medicine Regulations and telemedicine practices that govern the practice of prescribing medication via the Internet.  ECF 673-1 at 6.  Finally, Sodipo claims his counsel failed to object to erroneous jury instructions that omitted the Florida Regulations.  ECF 673-1 at 9-10.

As a preliminary matter, in his Reply, Sodipo seeks leave to adopt codefendant Nwaehiri's opening and reply briefs, in their entirety, as to Nwaehiri's § 2255 proceedings.  ECF 679 at 2.  Two of the three issues raised by Sodipo in this Petition were also raised by Nwaehiri in his § 2255 petition, namely the claim of ineffective assistance of counsel, albeit a different lawyer, and the claim as to the alleged erroneous jury instructions.  However, Nwaehiri raised three claims that Sodipo has not asserted: 1) that his counsel did not move for administrative resolution of his case; 2) that his counsel developed a conflict of interest; and (3) that the prosecution committed a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to inform the Court and the jury of the Florida Regulations. *See Nwaehiri v. United States*, WDQ-13-09903, 2014 WL 1800404, at *2 (D. Md. May 5, 2014).

Nwaehiri's claim of a conflict of interest on the part of his lawyer is not applicable to Sodipo, as Sodipo and Nwaehiri did not share the same trial counsel.  And, the Fourth Circuit has stated: "It is a well settled rule that contentions not raised in the argument section of the opening

brief are abandoned." *United States v. Al–Hamdi,* 356 F.3d 564, 571 n. 8 (4th Cir. 2004) (declining to consider argument first raised in reply brief); *see also United States v. Williams*, 445 F.3d 724, 736 n. 6 (4th Cir. 2006) (declining to consider an argument raised for the first time in the reply brief); *Hanlin–Cooney v. Frederick Cnty., Md.,* 2014 WL 576373, at *11 n. 32 (D. Md. Feb. 11, 2014) (declining to consider an argument first raised in reply brief). The rationale behind this general principle is that that the opposing party would be prejudiced by a consideration of the argument absent an opportunity to respond. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (citing *United States v. Head*, 340 F.3d 628, 630 n. 4 (8th Cir. 2003)).

In its Opposition to Sodipo's Petition, the government of course did not address the three additional arguments that Nwaehiri had raised.  However, the government did respond to those arguments in the context of its opposition to Nwaehiri's § 2255 petition.  *See* ECF 666 ("Nwaehiri Opposition").  Moreover, the contentions were considered by Judge Quarles and rejected.  ECF 682; 2014 WL 1800404, at *5-6. Therefore, I decline to allow Sodipo to use his Reply as a vehicle to adopt Nwaehiri's opening and reply briefs.

## B.     Mootness

I next consider, *sua sponte*, whether Sodipo's release from incarceration and/or the expiration of his term of supervised release has rendered his Petition moot.[6]

Sodipo was released from prison on June 21, 2013, and at that point he began a two-year term of supervised release.  Thus, he was on supervised release when he filed his Petition on September 30, 2013.  *See, e.g.*, ECF 671.  Sodipo's term of supervised release expired on June

---

[6] The government did not assert a mootness claim in response to my inquiry to Sodipo on March 18, 2016.  ECF 691.

20, 2015 (*see, e.g.*, ECF 671).  However, he was "in custody" for purposes of § 2255 at the time he filed his Petition.

"Whether an individual is in custody for § 2255 purposes is determined at the time the habeas action is filed . . . . The fact that custody expires after the habeas action is filed is irrelevant."  *United States v. Bryson*, 981 F.2d 720, 726 (4th Cir. 1992); *see United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999) ("A prisoner on supervised release is considered to be "in custody" for purposes of a § 2255 motion."); s*ee also Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam) ("We have never held . . . that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully* expired at the time his petition is filed.") (emphasis in original); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("The federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed.").

Generally, "expiration of [the] sentence does not moot the action" unless "'there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.'"  *Bryson*, 981 F.2d at 726 (citation omitted).  However, when a petitioner "does not challenge the validity of his underlying convictions," a § 2255 petition is "moot" when the petitioner has "completely served his sentence which his motions attack[.]"  *United States v. Caputo*, 972 F.2d 342, 1992 WL 180147 (4th Cir. July 29, 1992) (per curiam) (unpublished table decision) (citing *Lane v. Williams*, 455 U.S. 624 (1982)).

In *Lane*, 455 U.S. at 631-32, the Supreme Court explained:

Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.

\*\*\*

In *Carafas* [*v. LaVallee*, 391 U.S. 234 (1968)] we held that an attack on a criminal conviction was not rendered moot by the fact that the underlying sentence had expired. On the basis of New York law, we noted that "[i]n consequence of [the petitioner's] conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror." *Id.*, at 237, 88 S.Ct., at 1559 (footnotes omitted). These substantial civil penalties were sufficient to ensure that the litigant had "'a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him.' " *Ibid.* (quoting *Fiswick v. United States*, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196). In *Sibron v. New York*, 392 U.S. 40, 57, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917, we stated that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction."

In *Carafas*, 391 U.S. at 238, the habeas petitioner had been unconditionally discharged from his sentence while his appeal was pending. The Supreme Court rejected the state's mootness argument on that basis, in part because the petitioner was in physical custody when the time the petition was filed. *Id.* In contrast, in *Maleng*, 490 U.S. at 492, the petitioner sought habeas corpus relief seven years after his 1958 sentence had expired. The Court rejected the claim that "a habeas petitioner remains 'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted."[7] The *Maleng* Court did not, however, disturb the conclusion of *Carafas*, which, as explained in *Lane*, "held that an attack on a criminal conviction was not rendered moot by the fact that the underlying sentence had expired." *Lane*, 455 U.S. at 632. Rather, *Maleng* stands for the proposition that a petitioner may not file a habeas petition after his sentence has expired merely because of the possibility of collateral consequences stemming from his conviction.

---

[7] Although the *Maleng* Court concluded that the petitioner was not "in custody" under the 1958 sentence, it found that that he was "in custody" under a 1978 state sentence, which he had not yet begun to serve. *Id.* at 490.

Sodipo attacks the validity of his underlying conviction, not his sentence.  And, he did so while on supervised release.  *See* ECF 673.  "[I]t is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.'" *Spencer v. Kemna*, 523 U.S. 1, 12 (1998) (quoting *Sibron v. N.Y.*, 392 U.S. 40, 55 (1968)).  In fact, "[t]he mere 'possibility' [of adverse collateral legal consequences] is enough to preserve a criminal case from ending 'ignominiously in the limbo of mootness.'"  *Sibron*, 392 U.S. at 55 (quoting *Parker v. Ellis*, 362 U.S. 574, 577 (1960) (dissenting opinion)).

Under Maryland law, Sodipo, a Maryland resident (*see* ECF 689) with felony convictions, may neither serve on a jury nor carry a regulated firearm.  *See* Md. Code (2013 Repl. Vol., 2016 Supp.), § 8-103 of the Courts and Judicial Proceedings Article; Md. Code (2011 Repl. Vol., 2016 Vol.), § 5-133 of the Public Safety Article.  Similarly, under federal law, Sodipo may not own, use, or possess a firearm.  *See* 18 U.S.C. § 922(g)(1).

The delay in resolving this case is not attributable to Sodipo.  In my view, under all the facts and circumstances of this case, the Petition was timely filed while Sodipo was still in custody for § 2255 purposes.  And, it is not moot.

### C.      The Motion for Mistrial

As noted, Sodipo has alleged that the trial judge committed a "constitutional error" by denying his motion for mistrial, because the ruling was predicated on personal animosity towards defense counsel.  ECF 673-1 at 4-5.  According to Sodipo, the trial court should have granted a mistrial because a government witness, "in direct contravention of the district court's order, relayed to the jury that an alleged customer of Newcare had died as result of receiving prescription drugs from Newcare."  *Id.* at 5.  Sodipo explains: "The genie was out of the box, then the judge want us to find a curative instruction to cure the problem. But the Judge had

personal grudges toward [Sodipo's] lawyer and once again came to the rescue, had to reversed [sic] his own ruling." *Id.* In particular, Sodipo maintains that the "tension between the judge and [his] lawyer" was "so obvious" and led to "verbal confrontation." *Id.* at 4. He adds that at one time his lawyer "had to tell the judge to stop helping the government prosecuting the case." *Id.* at 5.

The government counters that there is "no evidence" of a personal grudge between the trial judge and defense counsel. ECF 675 at 27. The government adds: "As this Court can imagine, there are moments in any trial where discourse may be heated or even unpleasant. This trial was no different. But contrary to the defendant's view of the conduct of the parties and what transpired during trial, there was no animus, no grudge, and no unjustified rulings by the district court." *Id.* In addition, the government argues: "More importantly, the validity of the denial of the mistrial motion was already addressed on appeal. A grudge or ill-will nothwithstanding [sic], this issue cannot be raised again." *Id.* at 27-28.

Sodipo responds that there is evidence to support his claim of "animosity which existed between defense counsel and the trial judge." ECF 679 at 3. He alleges, without citing to the trial transcript, that "during the criminal process, the trial judge referred to defense counsel as a 'boy' while pointing his finger at counsel in an angry manner." *Id.* at 13, ¶ 4; *see also id.* at 3.

The motion for mistrial arose from the testimony of a government witness regarding evidence that the Court had previously ruled inadmissible. Teresa Ryan, a NewCare employee, was to testify that she received a phone call from "an hysterical mother who accused NewCare of distributing hydrocodone to her son who overdosed. In fact, the mother had advised that her son had died." ECF 675 at 21.

12

Judge Legg recounted that he had "ruled that the mention of the death was relevant under Fed. R. Evid. 401. The Court nevertheless decided to preclude any mention of the death using a Rule 403 analysis. The Court found that the prejudicial effect of the mention of the death outweighed the probative value of the testimony." ECF 325 (written ruling of Judge Legg, dated June 27, 2008), at 2.[8]  Accordingly, Ryan was instructed by the government not to refer to the death.  JA at 1082-83; *see also* ECF 568, Trial Trans. at 181:24-182:9.  However, as noted, despite the trial court's ruling and the government's instructions, Ryan told the jury that the relative of a NewCare customer had called NewCare and reported that her son had died after overdosing on hydrocodone that he had obtained from NewCare.  ECF 568, Trial Trans. at 185:24-185:25; *see also* JA at 1086.

Defendants promptly moved for a mistrial.  ECF 568, Trial Trans. at 186:6-186:23; 188:4-188:10; *see also* JA at 1087; JA at 1089. The motion was denied.  ECF 568, Trial Trans. at 188:12-188:15; *see also* JA at 1089.  The trial court explained that it had made its ruling "to be fair to the defendants at this point" and to allow testimony about overdoses but not about death, based on his analysis under Fed. R. Evid. 403.  ECF 568, Trial Trans. at 189:7-189:15; *see also* JA at 1090. The court added: "The point with respect to the testimony about death, is that it is . . . highly relevant testimony because what is at issue are the representations and statements made to Mr. Sodipo and Mr. Nwaehiri about the customer base."  ECF 568, Trial Trans. at 188:25-189:5; JA at 1089-90.  The court asked defense counsel if they wanted a curative instruction.  ECF 568, Trial Trans. at 189:16-189:17; *see also* JA at 1089.  But, they did not.  ECF 568, Trial Trans. at 202:21-204:4; *see also* JA at 1103-1105.

---

[8] ECF 325 is docketed in paper format only.

At the end of that day, defendants renewed their motion for mistrial.  ECF 568, Trial Trans. at 202:23-204:9; *id.* at 228:10-240:25; *see also* JA at 1103-05; JA at 1129-41. They argued, *inter alia*, that, as the court had previously ruled, Ryan's testimony was "so highly prejudicial and outweighed any probative value that a curative instruction would not suffice." ECF 568, Trial Trans. at 235:15-235:16; JA at 1136.

Again, Judge Legg orally denied the motion.  And, he issued a written opinion on June 27, 2008, to explain his ruling.  *See* ECF 325.  The court cited *United States v. Wallace*, 515 F.3d 327 (4th Cir. 2008), in which a witness inadvertently, but in violation of a court directive, made an improper statement.  ECF 325 at 2-3.  The court ruled that, "given the standard and the case law, it is clear to the Court that a mistrial is not warranted. The evidence is not so prejudicial as to affect the fundamental fairness of the trial." *Id.* at 3.  Judge Legg believed that the evidence, although improper, was "inadvertently admitted . . . ." *Id.* at 2.  He also indicated that "a curative instruction would draw the sting of the mention of the death," *id.* at 3, but noted that he did not issue a curative instruction because "Defendants…have requested that the Court not give a curative instruction to the jury because it would draw attention to the testimony." *Id.*

On July 7, 2008, Sodipo and Nwaehiri submitted a Motion for Reconsideration of Court's Denial of Defendants' Motion for Mistrial.  ECF 333; *see also* JA at 1654-67.  The court denied this Motion.  ECF 363; *see also* JA at 2083.

As discussed, defendants subsequently argued on appeal, *inter alia*, that "the district court erred in denying their motion for a mistrial based on a Government witness' testimony regarding evidence that the district court had ruled inadmissible under Fed. R. Evid. 403." *Sodipo*, 467 F. App'x at 162.  The Fourth Circuit stated, *id.*:

> We review a district court's denial of a motion for a mistrial for abuse of discretion. *United States v. Johnson,* 587 F.3d 625, 631 (4th Cir.2009). "An abuse

14

of discretion exists if the defendant can show prejudice." *United States v. Wallace*, 515 F.3d 327, 330 (4th Cir.2008) (internal quotation marks, alterations, and citation omitted). We have thoroughly reviewed the record and conclude that the district court did not abuse its discretion in denying the Appellants' motion for a mistrial.

The Fourth Circuit considered and rejected Sodipo's argument that the trial court erred in denying the motion for a mistrial based on Ryan's testimony. *Id.* Sodipo cannot "circumvent a proper ruling on…direct appeal by re-raising the same challenge in a § 2255 motion.[ ]" *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009). Issues fully considered on appeal are not subject to collateral attack, absent an intervening change in the law. *See United States v. Walker*, 299 F. App'x 273, 276 (4th Cir. 2008) (per curiam) ("Absent a change in the law, a prisoner cannot relitigate in collateral proceedings an issue rejected on direct appeal."); *United States v. Roane*, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (same); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam) (stating that claims fully considered on direct appeal cannot be reconsidered on collateral attack).

Sodipo has merely reframed his challenge to the trial court's failure to grant the motion for mistrial. He now claims that the trial court did not grant the mistrial because of a personal grudge against Sodipo's counsel. However, Sodipo may not "recast, under the guise of collateral attack, questions fully considered" earlier by the appellate court. *Boeckenhaupt*, 537 F.2d at 1183 (*citing Herman*, 227 F.2d 332). Sodipo's argument as to the mistrial was previously rejected by the Fourth Circuit.

Even if Sodipo's claim regarding a grudge between the trial judge and counsel were not precluded, the record does not reflect that the decisions of the trial judge regarding Ryan's testimony and the motion for mistrial were animated by bias or a grudge. As discussed, the trial judge instructed the government that no mention of death was to be made in front of the jury.

15

This is not consistent with a grudge against defense counsel. Nor did the court provoke Ryan's testimony. And, after the government witness nevertheless mentioned the reported death, the court asked both defense attorneys if they wanted a curative instruction, which they declined. ECF 325 at 3. The evidence simply does not support Sodipo's view that the decisions of the trial judge were motivated by animosity towards his lawyer.

Sodipo raises the related argument in his Reply that there was a structural error in his trial due to judicial bias. *See* ECF 679 at 2-4. "Structural error occurs when a judge with actual bias against a defendant presides at his trial." *Norris v. United States*, 820 F.3d 1261, 1266 (11th Cir. 2016) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)); *see also Tumey v. Ohio*, 273 U.S. 510, 535 (1927) ("No matter what the evidence was against [the defendant], he had the right to have an impartial judge.")). A structural error is considered per se prejudicial. *Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015) (citing *Owens v. United States*, 483 F.3d 48, 64 (1st Cir. 2007)), *cert. denied*, ___U.S.___, 136 S. Ct. 2031 (2016).

Before reaching the merits of this argument, I first address whether I may consider it, given that Sodipo has raised the issue for the first time in his Reply, and the issue was not raised on direct appeal. "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *Al–Hamdi*, 356 F.3d at 571 n. 8; *see also Williams*, 445 F.3d at 736 n. 6 (declining to consider an argument raised for the first time in the reply brief). The rationale for this general principle is that the opposing party would be prejudiced by consideration of the argument, absent an opportunity to respond. *See Clawson*, 451 F. Supp. 2d at 735 (citing *Head*, 340 F.3d at 630 n. 4). Here, in its Opposition, the government addressed Sodipo's contention that a grudge animated the trial judge's decision not to grant a mistrial. But,

the government had no opportunity to address the new argument asserted in the Reply, *i.e.*, that the entire trial was infected by judicial bias, rising to the level of a structural error.

Collateral attack is not a substitute for direct appeal. As a general rule, a petitioner who fails to raise a claim on direct appeal is barred from raising the claim on collateral review. *Sanchez–Llamas*, 548 U.S. at 350–51. However, constitutional claims that could have been raised on direct appeal, but were not, may be raised in a § 2255 motion if "cause" and "actual prejudice" are shown, *Frady*, 456 U.S. at 167–68, or "actual innocence" is shown. *Bousely*, 523 U.S. at 621; *see United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). Cause for a procedural default must turn on something external to the defense, such as the "novelty of the claim" (*i.e.*, a subsequent change in the law), or a denial of effective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *accord United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).

Prejudice requires the error to have caused "actual and substantial disadvantage." *Satcher v. Pruett*, 126 F.3d 561, 572 (4th Cir. 1997). This type of error "'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Sodipo's claim that judicial bias caused structural error thus satisfies the prejudice requirement for procedural default. However, Sodipo cannot satisfy the cause requirement. The charge of judicial bias does not turn on a subsequent change of law or, as discussed, *infra*, ineffective assistance of counsel. Sodipo does not allege any connection between his charge of judicial bias and his ineffective assistance of counsel claims. Sodipo does not claim, for example, that his counsel failed to object to judicial bias during the trial or failed to raise the argument at his appeal. Therefore, Sodipo is precluded from raising this argument in his § 2255 petition.

Even if Sodipo were not precluded from raising the argument that judicial bias infected his trial, the record reveals no bias, let alone bias rising to the level of "structural error." *Norris*, 820 F.3d at 1266. A review of the record reveals that on the eleventh day of trial, Sodipo's counsel and the trial judge disagreed whether a particular witness would be referred to as a friend or an associate of another witness. ECF 568, Trial Trans, at 225:16-226:23; *see also* JA at 1126-27. During the course of disagreement and after the jury had been dismissed, the trial judge advised Sodipo's lawyer to refrain from "mock[ing] one of [his] rulings again[.]" ECF 568, Trial Trans, at 227:5-227:6; JA at 1128. In turn, defense counsel asked the trial judge "not to yell at [him] or point at [him]." ECF 568, Trial Trans, at 226:12; JA at 1128. A moment of heated discourse between a judge and a lawyer during a lengthy trial, out of earshot of the jury, does not indicate bias that rises to the level of structural error. At most, Sodipo has demonstrated heated discourse, not judicial bias.

### D.       Ineffective Assistance of Counsel

#### 1. Legal Standard

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 397 (1985). Ineffective assistance of counsel is a well recognized basis for relief under § 2255. *See generally Missouri v. Frye*, ___ U.S. ____, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, ___ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

To challenge successfully a sentence of imprisonment under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687–88. *See Chaidez v. United States*, ___ U.S. ____, 133 S. Ct. 1103, 1107–8 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Lafler*,

132 S. Ct. at 1384; *Hill v. Lockhart*, 474 U.S. 52 (1985); *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011); *see, e.g., United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013).

First, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland*, 466 U.S. at 688. This is known as the "performance prong," which relates to professional competence. The burden is on the petitioner to establish "'that counsel made errors so serious that "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Strickland*, 466 U.S. at 687).

The performance prong is "'difficult'" to establish. *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) (quoting *James v. Harrison*, 389 F.3d 450, 457 (4th Cir. 2004)). "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence*, 517 F.3d at 708 (quoting *Strickland*, 446 U.S. at 689); *see Harrington*, 562 U.S. at 104; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Indeed, "the *Strickland* standard must be applied with scrupulous care," *Harrington*, 562 U.S. at 105, and "the standard of judging counsel's representation is a most deferential one." *Id.* The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*

The *Padilla* Court said, 559 U.S. at 371: "Surmounting *Strickland's* high bar is never an easy task." Accordingly, a petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). Failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court...to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### 2. Applicability of the Florida Regulations

Sodipo contends that he could not be guilty under the CSA because the Florida Headquarters, with which he allegedly conspired, complied with Florida Board of Medicine Regulations ("Florida Regulations") governing the dispensing of prescriptions over the Internet. *See* ECF 673-1 at 6-9.[9]

---

[9] Codefendant Nwaehiri sought to file a *pro se* brief in the Fourth Circuit that, according to the government, raised the same argument. *See* ECF 675 at 30, n. 15. The Fourth Circuit denied Nwaehiri's motion to file the brief, but in a footnote it stated: "Even were we to grant the motion to file a *pro se* supplemental brief, our review of the proposed brief persuades us that Nwaehiri fails to articulate claims that would warrant relief." *Sodipo*, 467 F. App'x 163, n. 2.

At the relevant time, Florida Regulations Section 64B8-9.014 (repealed as of October 26, 2014, revised and reenacted as 64B8-9.0141), stated:

(1) Prescribing medications based solely on an electronic medical questionnaire constitutes the failure to practice medicine with that level of care, skill, and treatment which is recognized by reasonably prudent physicians as being acceptable under similar conditions and circumstances, as well as prescribing legend drugs other than in the course of a physician's professional practice.

(2) Physicians and physician assistants shall not provide treatment recommendations, including issuing a prescription, via electronic or other means, unless the following elements have been met:

(a) A documented patient evaluation, including history and physical examination to establish the diagnosis for which any legend drug[10] is prescribed.

(b) Discussion between the physician or the physician assistant and the patient regarding treatment options and the risks and benefits of treatment.

(c) Maintenance of contemporaneous medical records meeting the requirements of Rule 64B8-9.003, F.A.C.

(3) The provisions of this rule are not applicable in an emergency situation. For purposes of this rule an emergency situation means those situations in which the prescribing physician or physician assistant determines that the immediate administration of the medication is necessary for the proper treatment of the patient, and that it is not reasonably possible for the prescribing physician or physician assistant to comply with the provision of this rule prior to providing such prescription.

(4) The provisions of this rule shall not be construed to prohibit patient care in consultation with another physician who has an ongoing relationship with the patient, and who has agreed to supervise the patient's treatment, including the use of any prescribed medications, nor on-call or cross-coverage situations in which the physician has access to patient records

Sodipo argues that under *Gonzales v. Oregon*, 546 U.S. 243 (2006), the Court must defer to the Florida Regulations for prescribing medicine online. *See id.* at 6-7.[11]   Accordingly, he

---

[10] *See, e.g.*, Fla. Stat. § 465.003(8) (2014) (defining "legend" and "prescription" drugs synonymously as drugs that are "required by federal or state law to be dispensed only on a prescription.").

asserts that his counsel's failure to investigate and incorporate the Florida Regulations into his defense was prejudicial error.  In his view, compliance with the Florida Regulations exonerated both him and Nwaehiri.  *See id.* at 7-8.

The government counters that Florida law was not applicable to Sodipo's case, and that even if it was, Sodipo was in violation of the Florida Regulations.  *See* ECF 675 at 31; *see also* Nwaehiri Opposition, ECF 666 at 26.   The government argues, ECF 675 at 31:

> The defendant seems to believe that what Sodipo and Nwaehiri were doing, and what the prescribing doctors in Florida were doing, somehow fits into [the Florida] regulatory scheme. However, the evidence overwhelmingly supported the fact that those doctors and the defendants were not only acting outside the law as stated in Florida, but also as stated in Maryland, and in the Controlled Substance Act of 1970 codified at 21 United States Code § 841 *et seq.* as well. Exactly what "viable affirmative defense" defense counsel could have manufactured out of the Florida regulations is not clear.  Whether it would have been successful at all, is even less clear.

Further, the government contends that "drug abuse will never be considered a legitimate medical purpose" under the CSA and thus the Florida Regulations are irrelevant to Sodipo's case.  Accordingly, it maintains that there was no error.  Nwaehiri Opposition, ECF 666 at 26; *see also* ECF 675 at 30.

Sodipo's second allegation of ineffective assistance is that his trial counsel did not object to jury instructions that failed to include the "very [Florida] regulations that guided and permitted telemedicine-online prescription practices."  ECF 673-1 at 10.  The government responds: "Any such objection would have been denied. Legally the Florida guidelines were not relevant, and

---

[11] Because Nwaehiri also relied on *Gonzales v. Oregon*, 546 U.S. 243 (2006), to support his argument that the Florida Regulations were applicable, the government refers the Court to its response to Nwaehiri's petition.  *See* Nwaehiri Opposition, ECF 666. ECF 675 at 30, n. 14. Accordingly, I refer to the Nwaehiri Opposition, where applicable, as well as Judge Quarles's disposition of the issue in the Quarles Opinion (ECF 682).

factually, the doctors and the defendants were in violation of those guidelines as well." ECF 675

at 31.

Judge Quarles analyzed the identical legal issue in *Nwaehiri v. United States*, ECF 682,

2014 WL 1800404 (D. Md. May 5, 2014), addressing the applicability of the Florida Regulations

to this case. His analysis is equally apt as to Sodipo. Judge Quarles wrote, ECF 682 at 8-12; *see*

*also* 2014 WL 1800404, at *3-4:[12]

> Under the CSA's interpretive regulations, prescriptions for controlled substances must "be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." *Gonzales*, 546 U.S. at 250 (*quoting* 21 C.F.R. § 1306.04(a) (internal quotations omitted)). Accordingly, to convict a medical practitioner of a violation of the CSA, the government must prove: "(1) that the defendant distributed or dispensed a controlled substance; (2) that the defendant acted knowingly and intentionally; and (3) that the defendant's actions *were not for legitimate medical purposes in the usual course of his professional medical practice or were* beyond the bounds of medical practice." *United States v. Hurwitz,* 459 F.3d 463, 475 (4th Cir. 2006) (*quoting United States v. Singh,* 54 F.3d 1182, 1187 (4th Cir. 1995) (internal quotation marks omitted)) (emphasis added). "[T]here are no specific guidelines concerning what is required to support a conclusion that a physician acted outside the usual course of professional practice;" instead "a case-by-case analysis of evidence must be made to determine whether a reasonable inference of guilt may be drawn from specific facts." *United States v. Hitzig,* 63 F. App'x 83, 86 (4th Cir.2003).

> In *Gonzales,* the State of Oregon enacted a law that authorized physicians to prescribe a lethal dose of controlled substances to assist a terminally ill patient in committing suicide. 546 U.S. at 249. In response, the Attorney General issued an interpretive rule which stated that assisted suicide is not a "legitimate medical purpose" under § 1306.04(a). *Id.* at 253–54. The Supreme Court held that Congress had not delegated to the Attorney General authority under the CSA to define a "legitimate medical purpose," and, accordingly, his interpretation was not entitled to *Chevron* deference or deference under *Auer v. Robbins,* 519 U.S. 452, 461–63, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). *See id.* at 255–69. The Court noted that the CSA's "structure and operation ... presume and rely upon a functioning medical profession regulated under the States' police powers." *Id.* at 270. Because the CSA did not prohibit the prescribing of medication for the

---

[12] The Westlaw version contains minor variations from the text of ECF 682. I have quoted from ECF 682.

purpose of assisting suicide, the Attorney General lacked authority to bar the operation of Oregon's law. *See id.* at 274–75.

Here, Nwaehiri argues that the Florida Regulations have a similar operation as the Oregon law in *Gonzales. See* ECF No. 670 at 4–7. The Florida Regulations prohibit physicians from "provid[ing] treatment recommendations, including issuing a prescription, via electronic or other means," unless the following conditions are met: (1) "[a] documented patient evaluation, including history and physical examination to establish the diagnosis for which any legend drug is prescribed;" (2) the physician talks to the patient about treatment options, risks, and benefits; and (3) maintenance of patient medical records. *See* ECF No. 660–3 at 1. Although these regulations establish a *process* by which physicians may prescribe medication online, unlike the Oregon law, they do not authorize new "legitimate medical purposes" for which controlled substances may be prescribed. Thus, *Gonzales* is inapposite.

As the Supreme Court noted in *Gonzales,* the "prescription requirement" of the CSA "ensures patients use controlled substances under the supervision of a doctor so as to prevent addiction and recreational abuse. As a corollary, the provision also bars doctors from peddling to patients who crave the drugs for those prohibited uses." 546 U.S. at 274 (*citing U.S. v. Moore*, 423 U.S. 122, 135, 143, 96 S.Ct. 335, 342, 346, 46 L.Ed.2d 333 (1975)); *see also, e.g., United States v. Boccone,* 12–4949, 2014 WL 643016, at *13 (4th Cir. Feb. 20, 2014) (finding sufficient evidence to convict nurse practitioner of violating the CSA because, *inter alia,* "indicia of diversion, addiction, and abuse[ ] in the medical record of these patients [showed] that he knew or had reason to know that prescriptions he issued were for an illegitimate purpose or were not within the scope of usual medical practice").

The evidence at trial established that Nwaehiri knew—or was willfully blind to—that many of NewCare's customers were purchasing hydrocodone for reasons of addiction or recreational abuse, rather than legitimate medical need. *See* ECF No. 666 at 6–7, 11–12, 14–15. No matter what procedure Nwaehiri—or his co-conspirators—used to dispense prescriptions, as medical practitioners they were subject to the CSA's requirement that they dispense prescriptions only "for a legitimate medical purpose ... in the usual course of [their] professional practice." *See* § 1306.04(a); *e.g., United States v. Lawson,* 682 F.2d 480, 482 (4th Cir.1982) ("The question ... in any case where a pharmacist is charged with illegal distribution of controlled substances, is whether he knew that the purported prescription was not issued for a legitimate medical purpose or in the usual course of medical practice."). Accordingly, because the Florida Regulations are not relevant to the question of whether Nwaehiri or his co-conspirators filled prescriptions for a "legitimate medical purpose" under the CSA,[ ] Nwaehiri's trial counsel did not err by failing to investigate the regulations, introduce them as evidence at trial, or object to their absence from the jury instructions.[ ] [*Cf. Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984) ("Counsel is not required to

engage in the filing of futile motions .") (*quoted in Moody v. Polk,* 408 F.3d 141, 151 (4th Cir.2005)).] [Final bracket alteration added; all other alterations in original]

Similarly, evidence at trial established that Sodipo, like his codefendant, knew or was willfully blind to the fact that many NewCare customers were purchasing hydrocodone for reasons of addiction or abuse, rather than legitimate medical need.  *See, e.g.*, JA at 883-84; JA at 1080-81; JA at 1085; JA at 889; SJA at 101-102; JA at 884-90; JA at 1381-86; SJA at 83; JA at 879-890; JA at 973; JA at 990-91; JA at 1385-86; SJA at 85; JA at 853-57; SJA at 164-65; SJA at 136-37; JA at 1210-11.  And, regardless of the applicability of the Florida Regulations, Sodipo, like Nwaehiri, was subject to the CSA's requirement to dispense prescriptions only "for a legitimate medical purpose ... in the usual course of [their] professional practice." *See* 21 C.F.R. § 1306.04(a).

Accordingly, I am persuaded by Judge Quarles's reasoning that "because the Florida Regulations are not relevant to the question of whether [Sodipo] or his co-conspirators filled prescriptions for a 'legitimate medical purpose' under the CSA,[1]" Sodipo's "trial counsel did not err by failing to investigate the regulations, introduce them as evidence at trial, or object to their absence from the jury instructions." *Nwaehiri*, WDQ-13-09903, 2014 WL 1800404, at *4.

Similarly, Sodipo's appellate counsel did not err in failing to argue on appeal or in a Rule 33 Motion that the Florida Regulations were a defense to his liability.  Although Sodipo requested that his counsel make this argument, *see* ECF 673–1 at 10-11, appellate counsel has no constitutional duty to raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983).  In *Nwaehiri*, WDQ-13-09903, 2014 WL 1800404, at *5, Judge Quarles elaborated:

> [Appellate] Counsel must be allowed to exercise reasonable professional judgment in selecting those issues most promising for review because "to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy." *Jones,* 463 U.S. at 754; *Ivey v. Ozmint,* 304 F. App'x 144, 150 (4th Cir. 2008) (Appellate counsel must be accorded "the

presumption that he decided which issues were most likely to afford relief on appeal.").

Furthermore, as Judge Quarles observed, the claim regarding the applicability of the Florida Regulations "was not even colorable.[1]" *Id.* (citing *Sodipo*, 467 F. App'x at 163 n. 2). It follows that neither trial counsel nor appellate counsel was ineffective in failing to make such an argument on behalf of Sodipo.

Accordingly, Sodipo has failed to establish ineffective assistance of counsel on the grounds that his counsel failed to use the Florida Regulations in his defense or on appeal.

### IV.     Conclusion

For the foregoing reasons, I shall deny the Petition (ECF 672).

Under Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, no Certificate of Appealability ("COA") shall be issued, because Sodipo has not made a substantial showing of the denial of a constitutional right. *See Tennard v. Pretke,* 542 U.S. 274, 282 (2004). However, denial of a COA does not bar the petitioner from seeking a COA from the appellate court.

A separate Order follows, consistent with this Memorandum Opinion.


Date:   November 17, 2016                              _____/s/_____

                                                       Ellen Lipton Hollander
                                                       United States District Judge